# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

BETTY R. SHIPLEY,            *

                           *

          Plaintiff,   *

vs.                    *

                           *   CIVIL ACTION NO. 18-437-CG-B

HELPING HANDS THERAPY,   *

*et al.*,                  *

                           *

          Defendants.   *

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Bettye R. Shipley's Motion to Remand (Doc. 10). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). The Court conducted an evidentiary hearing on March 6, 2019. (Doc. 35). Upon consideration of the parties' briefs and the testimony and materials submitted at the evidentiary hearing, the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand be **DENIED**.

## I.   <u>Factual and Procedural Posture</u>.

Plaintiff, Bettye R. Shipley ("Shipley" or "Plaintiff"), commenced this action on October 12, 2017, in the Circuit Court of Hale County, Alabama. (Doc. 1-1 at 3). In her complaint, Shipley names as Defendants Helping Hands Therapy/Greensboro

Out-Patient Clinic and Sarah Beaugez, PT. (Id.). Shipley asserts that she had a left knee replacement and underwent prescribed physical therapy with Helping Hands Therapy, located in Greensboro, Alabama, to regain strength and range of motion in her left knee. Shipley contends that, on September 8, 2016, Defendant Sarah Beaugez, a physical therapist with Helping Hands Therapy, forced her leg to bend to fourteen degrees beyond her tolerance, and in so doing, caused her left knee replacement to fail. (Id. at 3-4). Shipley contends that she was unable to walk or do anything for two weeks, that she is unable to walk properly and needs another surgery, that she is in constant pain and requires daily pain medication, and that she must use a wheel chair and a riding buggy in order to get around places such as the grocery store. (Id.). Shipley asserts that Beaugez acted negligently and with wantonness, and seeks compensatory and punitive damages. (Id.)

On October 11, 2018, New Hope LLC d/b/a Helping Hands Therapy/Greensboro Out-patient Clinic filed a Notice of Removal. (Doc. 1). On the same date, Defendant Beaugez filed a notice of consent and joinder in the removal. (Doc. 3). Defendants assert the existence of complete diversity because Shipley is a resident of Alabama; New Hope LLC is a Mississippi corporation, with its principal place of business in Meridian, Mississippi, and its three members are Jia Liu, Roshanda Lankford, and

Bailing Wang, residents of Georgia, Mississippi, and Georgia respectively. [1] (Doc. 1-2). Defendants further contend that Defendant Beaugez was a resident of Mississippi at the time the lawsuit was filed in October 2017 and that she had an intent to remain there at that time. (Doc. 1 at 3).

With respect to the amount in controversy, Defendants contend that on May 24, 2018, in response to Helping Hands' interrogatories, Shipley claimed to be housebound for most of the time since her injury on September 8, 2016, and that she now requires the use of a cane and has slept in a recliner for over two to three years. She also indicated that she had to have another surgery in January 2018 and that she had filed a claim for disability due to the injuries she sustained as a result of Beaugez's actions. (Doc. 1-1 at 151, Plaintiff's Interrogatory Responses, Nos. 10, 11, and 14).

Defendants assert that subsequent thereto, Helping Hands issued Requests for Admissions to Shipley requesting that she admit or deny that that her damages exceed $75,000 and that she would accept more than $75,000. (Doc. 1, Doc. 1-1 at 161-62). Shipley responded that she was unable to admit or deny the admission requests, and in response thereto, Defendants requested that she amend her discovery responses. (Id.). When

---

[1] Defendants later clarified that Liu, Lankford, and Wang are citizens of Georgia, Mississippi, and Georgia respectively. (Doc. 18-1 at 3).

Shipley refused to do so, Helping Hands filed a motion to compel in state court and requested an order directing Shipley to supplement her responses by October 1, 2018. (Id. at 6). The state court scheduled the matter for a hearing on November 5, 2018, which was more than one year after Shipley had filed her complaint in state court. Defendants requested that the hearing date be moved up, but Shipley refused. (Id. at 10).

Defendants contend that this case became removable on October 1, 2018, when Shipley refused to respond to Defendants' requests regarding damages with full knowledge that the one-year limitation for removal was approaching. (Doc. 1-1 at 10). Defendants further assert that Plaintiff's refusal to limit her damages and refusal to agree to moving up the hearing date for the summary judgment motion shows an intent to dodge jurisdictional inquiries in an effort to defeat removal jurisdiction. (Id.). According to Defendants, those refusals, coupled with the injuries claimed and damages sought in Shipley's complaint and interrogatory responses provided Defendants with the evidence necessary to ascertain that Plaintiff was seeking more than $75,000 and unambiguously establishes that the amount in controversy exceeds $75,000. Defendants thus argue that the case was timely removed. (Id.)

Shipley filed her motion to remand on November 8, 2018. (Doc. 10). In her motion to remand, Shipley argues that a record from

the Alabama Secretary of State clearly shows that Helping Hands Therapy is an Alabama limited liability company incorporated in Alabama; thus, there is no diversity jurisdiction. (Doc. 10 at 4). Shipley further asserts that even if Helping Hands Therapy is a trade name for a Mississippi business, at the time the lawsuit was filed, its principal place of business was Alabama under the "nerve center test" given that all three of its clinics are located in Alabama. (Id. at 5). Shipley contends that Meridian, Mississippi cannot possibly be Helping Hands' "nerve center" because there is no corporate activity occurring there, as all of its clinics are located in Alabama. (Id.)

With respect to the amount in controversy, Shipley asserts that she "does not intend to waive an argument that the amount in controversy is less than $75,000" and "that the issue is moot without complete diversity." (Id. at 7). Plaintiff also contends that contrary to Defendants' assertion, she refused to move up the hearing date in state court because the motion to compel was "obviously frivolous," and Defendants' only goal was to try to establish diversity jurisdiction. (Id. at 8).

In Defendant Beaugez's response in opposition to Shipley's motion to remand (Doc. 16), Beaugez asserts that the sole basis for Shipley's motion is her contention that Helping Hands is a citizen of Alabama. Beaugez notes that Shipley made no argument contesting the amount in controversy and offered no evidence to

rebut Helping Hands' showing that the amount in controversy is satisfied. (Id.).

Defendant Helping Hands also filed a response in opposition to Shipley's motion. (Doc. 14). Helping Hands argues that Shipley's motion actually bolsters Defendants' contention that the amount in controversy exceeds $75,000. (Doc. 18). According to Helping Hands, Shipley has indicated that she is seeking compensatory and punitive damages for significant physical harm, increased medical costs, pain, suffering and other damages, that she cannot walk properly and is in constant pain and that she takes pain medication daily and uses a wheelchair and riding buggy at places such as the grocery store. Helping Hands asserts that such evidence is sufficient to establish that the amount in controversy exceeds $75,000. (Id. at 7).

With respect to diversity, Helping Hands contends that contrary to Shipley's assertions, for diversity purposes, a limited liability company, unlike a corporation, is a citizen of any state of which a member of the company is a citizen, and it matters not where the company was formed or has its principal place of business. (Id. at 6). Helping Hands further contends that the uncontroverted evidence establishes that Helping Hands Therapy, LLC was not formed until March 2018 and that the allegations in Plaintiff's complaint relate to services provided at a clinic operated by New Hope, LLC, which was doing business

under the trade name Helping Hands Therapy. (Id. at 5). Additionally, Defendant asserts that at the time this lawsuit was filed, and at the time of removal, New Hope, LLC d/b/a Helping Hands Therapy, had three members, namely Jia Liu, Roshonda Lankford, and Bailey Wang, who were *citizens* of Georgia, Mississippi, and Georgia respectively. (Id. at 6). Helping Hands also asserts that it has demonstrated, and Shipley has not contested, that she is a citizen of Alabama, and Sarah Beaugez is a citizen of Mississippi. Thus, diversity of citizenship has been established. (Id.).

On December 4, 2018, Shipley filed her reply to Defendants' response in opposition to her motion to remand (Doc. 21). In her reply, Shipley argues that the removal was untimely. (Id. at 1). According to Shipley, while Defendants contend that they did not know that the amount in controversy exceeded $75,000 until October 1, 2008, her factual allegations did not change between the filing of her complaint on October 11, 2017, and October 1, 2018, the date Defendants contend they were on notice that the amount in controversy exceeds $75,000. (Id. at 2). Shipley also asserts that assuming that Helping Hands is a citizen of Mississippi and Georgia, diversity jurisdiction is still lacking because Defendant Beaugez is a citizen of Alabama notwithstanding her representations to the Court. Shipley avers that Beaugez has an Alabama driver's license, appears to own a

car with a current Alabama registration, is registered to vote and has voted in Alabama, and in July 2017 and July 2018, she received two traffic tickets in Alabama, and both tickets reflect an Alabama home address. (Id. at 3-4).

Defendant Beaugez filed a response in opposition to Plaintiff's response. (Doc. 31). In her response, Beaugez argues that the removal was timely and that at the time the lawsuit was filed in October 2017, she physically resided in Mississippi and had the intent to remain there. (Id.) Helping Hands also filed a response to Shipley's reply (Doc. 30). Helping Hands argues that the removal was timely and that Beaugez was a citizen of Mississippi at the time the Complaint was filed. (Doc. 30). Following the evidentiary hearing on March 6, 2019, the parties filed supplemental briefs, at the Court's directive, on the issue of whether the removal was timely filed. (Docs. 37, 38). Shipley asserts that Defendants' removal was untimely, while Defendants allege that the removal was timely filed and that Shipley waived the timeliness issue by not raising it in her motion to remand.

## II. <u>DISCUSSION</u>.

### A.    Standard of Review

A removing defendant has the burden of proving proper federal jurisdiction. See <u>Adventure Outdoors, Inc. v. Bloomberg</u>, 552 F.3d 1290, 1294 (11th Cir. 2008); <u>Friedman v. New York Life Ins.</u>

Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation and internal brackets omitted); McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (noting that "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."); Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998) ("In a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1092 (11th Cir. 2010) (citation and internal brackets omitted).

"Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine

whether it is facially apparent that a case is removable." SUA
Ins. Co. v. Classic Home Builders, LLC, 751 F. Supp. 2d 1245,
1252 (S.D. Ala. 2010) (quoting Roe v. Michelin North America,
Inc., 613 F.3d 1058, 1061-62 (11th Cir. 2010)).  Courts may use
judicial experience and common sense to determine whether the
case stated in the complaint meets the requirements for federal
jurisdiction. Id.  Reliance on "speculation" is "impermissible."
Id. (citing Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744,
771 (11th Cir. 2010)).

### B. Amount In Controversy

As a preliminary matter, the undersigned observes that while
Shipley has contested the existence of complete diversity of
citizenship, she has not argued or sought to dispute Defendants'
showing that the amount in controversy exceeds $75,000.  In her
complaint, Shipley asserts a medical malpractice claim against
Defendants based on physical therapy services that Defendant
Beaugez provided Shipley following a left knee replacement.  As
noted, *supra*, Shipley contends that her knee replacement was
ruined, that she was unable to walk for two weeks, that she is
in constant, excruciating pain which requires daily pain
medication, that she is unable to walk properly, and that she
requires a wheelchair and a riding buggy when she is out.
Shipley further alleges that Beaugez acted negligently and
wantonly, and she seeks punitive and compensatory damages.

Additionally, in her discovery responses, Shipley alleges that she had to have another knee surgery in January 2018 due to Beaugez's actions, that she has been homebound most of the time, and that she has to use a cane and sleep in a recliner. (Doc. 1-1 at 151). The undersigned finds that while Shipley did not include a specific dollar amount in her complaint and refused in her admissions request to admit or deny that the damages in her case exceeded $75,000, her assertions regarding the extent of her injuries suffice to establish by a preponderance of the evidence that, at the time of removal on October 11, 2018, the amount in controversy exceeded the jurisdictional amount. Thompson v. Ortensie, 2017 U.S. Dist. LEXIS 174959, 2017 WL 4772741 (S.D. Ala. Oct. 23, 2017)("Courts may use judicial experience and common sense in determining whether the minimum amount in controversy is satisfied.")

### C.  Citizenship of the Defendants

The Court's next inquiry is whether complete diversity exists. As note, *supra*, Shipley initially argued in her motion to remand that this case was improperly removed because Defendant Helping Hands Therapy was incorporated in Alabama, and all of its "nerve centers" are located in Alabama. In response, Defendants offered unrebutted evidence that Helping Hands Therapy, LLC, was not incorporated until March 2018 and that Shipley was treated on September 2016 by New Hope, LLC, d/b/a

Helping Hand Therapy, and its employee Sarah Beaugez, PT. Defendants also presented sworn testimony that the members of New Hope, LLC, are Jia Liu, Roshonda Lankford, and Bailing Wang, and that at the time this action was commenced, they were citizens of Georgia, Mississippi, and Georgia respectively. (Doc. 18-1)

The rule for diversity jurisdiction is "that the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all the members composing the organization." Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1021 (11th Cir. 2004) (per curiam) (citing Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990)); see also Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016) ("So long as . . . an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members." (reaffirming Carden)). Accordingly, "to sufficiently allege the citizenships of . . . unincorporated business entities, a party must list the citizenships of all the members of [those] entities." Rolling Greens, 374 F.3d at 1022; accord Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011). In this case, Shipley has made no effort to rebut Defendants' showing with respect to New Hope, LLC. Instead, in its reply, Shipley questioned the citizenship of Defendant

Beaugez. Defendants contend that Beaugez is a citizen of Mississippi, while Shipley contends that Beaugez is a citizen of Alabama.

Courts have held that, "[f]or diversity purposes, a person is a citizen of the state in which he is domiciled." Slate v. Shell Oil Co., 444 F. Supp. 2d 1210, 1214 (S.D. Ala. 2006). A person's domicile is "the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . .'" McCormick, 293 F.3d at 1257-58 (quoting Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974)).[2] This Court, in Slate, stated that the determination of one's domicile is a "totality of the circumstances" analysis in which no single factor carries greater weight than another. Slate, 444 F. Supp. 2d at 1215. The Slate court included several indicia that can be considered, including:

> . . . the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established.

---

[2] All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209, (11th Cir. 1981).

Id.

Finally, a person may only have one domicile at a time, and
there is a presumption that, once a person establishes their
domicile, they are considered a citizen thereof until they have
effectively manifested a new one.  Id.  To establish that one's
domicile has changed, two things must be proven: "(1) physical
presence at the new location, and (2) intent to remain there
indefinitely."  Id. at 1216; see also McCormick, 293 F.3d at
1258 (noting that "a change of domicile requires [a] concurrent
showing of (1) physical presence at the new location with (2) an
intention to remain there indefinitely.").

At the evidentiary hearing, Defendant Beaugez was the only
witness called to testify.  Beaugez testified that she was born
in Mississippi, reared in Mississippi, attended school in
Mississippi, and has spent her entire life living in Mississippi
except limited periods during which she resided in Colorado and
Alabama. According to Beaugez, she relocated from Mississippi to
Alabama in September 2016 because she was in a romantic
relationship with someone residing in Demopolis, Alabama. She
moved into that individual's home, and on March 9, 2017, she
obtained an Alabama's Driver's license and registered to vote in
Alabama. (Pls. ex. 2, 3).  Both documents bear the Demopolis,
Alabama address.

Beaugez testified that the relationship soured, and on September 7, 2017, she relocated to Lucedale, Mississippi, with the intent to make Mississippi her home. Beaugez further testified that she obtained employment and rented a home in Lucedale, Mississippi. Defendants offered a Direct TV order form that reflects that Beaugez had cable service installed at her Lucedale, Mississippi residence on September 9, 2017, along with a pay stub from her employer at the time, George Regional Health System dated October 12, 2017.[3] (Def.'s exs. 8, 9; Doc. 35-1 at 77-78). The pay stub bears the same Lucedale, Mississippi address as the Direct TV order form. (Doc. 35-1 at 78). Additionally, Defendants presented Beaugez's Mississippi vehicle registration which reflects that she registered her vehicle in Mississippi on September 29, 2017. (Def. ex. 2; Doc. 35-1 at 2). These documents are consistent with Beaugez's testimony that, after her romantic relationship soured in September 2017, she relocated from Alabama to Mississippi on September 6, 2019, with the intention of remaining in Mississippi.

Beaugez testified that in November 2017, she had a change of heart and decided to return to Alabama to give the relationship

---

[3] Defendants also presented a Hepatitis B Vaccine form (Def. ex. 7) that reflects that Beaugez was administered he vaccine at her workplace in Lucedale, Mississippi on September 19, 2019.

another try. As she had done before, Beaugez relocated to Alabama and lived in her romantic partner's home in Demopolis, Alabama. She ended the relationship a second (and allegedly final) time in March, 2018, and relocated back to Mississippi. Beaugez's 2017 tax records reflect that in July 2018, Alabama and Mississippi state tax returns were filed on her behalf for the time periods during which she worked in both states during 2017. (Def.'s exs. 5, 6; Doc. 35-1 at 6-26). The tax returns bear a Louisville, Mississippi address and are consistent with Beaugez's testimony that, after the second attempt at her relationship failed, she relocated back to Mississippi.

As noted, *supra*, the law in this Circuit provides that once a person establishes a domicile, it continues until the person establishes a new domicile. To effect a change of one's legal domicile, there must be a change in residence, and there must be an intention to remain there. See McCormick, 293 F.3d at 1258. Based on the preponderance of the evidence presented, including the straight forward testimony of Beaugez, the undersigned finds that Beaugez was domiciled in Mississippi, not Alabama, when this lawsuit was filed on October 12, 2017, and as a result, complete diversity of citizenship existed at that time.[4]

---

[4] At the hearing, Shipley submitted various documents to establish that Beaugez was a citizen of Alabama when the lawsuit was filed; however, the documents do not change the outcome. For example, when Beaugez was issued a traffic ticket in Marengo

**D. Timeliness**

Notwithstanding the Court's finding that diversity jurisdiction existed at the time of removal, the inquiry does not end there. In her reply filed on December 8, 2018 (doc. 21), Shipley argues for the first time that the removal was untimely because Defendants did not discover any new facts about the case between the filing of the complaint and the removal; thus, the case should have been removed much earlier. (Id.).

---

County, Alabama on July 14, 2017, she presented an Alabama driver's license that listed a Demopolis address. (Plaintiff's exs. 2, 5; Doc. 35 at 1-5). The document does not conflict with Beaugez's testimony that at the time, she was residing in Alabama and had the intention to be here. Further, the document reflecting that Beaugez was registered and voted in Alabama during the December 2017 election does not conflict with Beaugez's testimony and supporting documents that, for a near three month period, namely September 2017 through some point in November 2017, she returned to Mississippi following the breakup of her romantic relationship, and was not only domiciled in Mississippi, but intended to make it her home. At that point, she took a job in Mississippi, rented a house in Mississippi, and had her utilities turned on in Mississippi. It was only after Beaugez decided to attempt a reconciliation, which ultimately proved to be unsuccessful, that she returned to Alabama. Following the unsuccessful reconciliation, Beaugez again returned to Mississippi in March 2018 with the intent to remain there. The fact that she received a second Alabama traffic citation on July 27, 2018 (Plaintiff's ex. 6; Doc. 35 at 6), and at the time, presented her Alabama driver's license that listed a Demopolis address is of no moment given her testimony and supporting documents that, at the time, she had relocated back to Mississippi and acquired a residence and employment in Mississippi, that she was passing through Alabama en route to somewhere else, and that she had not yet renewed her Mississippi license, which expired while she was still living in Alabama in January 2018. (Def. exs. 3, 4, 5, 6; Doc. 35-1 at 3-26). Thus, her Alabama driver's license was the only valid license she possessed at the time. (Plf. exs. 1, 2, 3; Doc. 35 at 1-3).

Upon removal of an action to federal court, 28 U.S.C. § 1447(c) implicitly recognizes two bases upon which a district court may order a remand: "when there is (1) a lack of subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction." Hernandez v. Seminole Cty., 334 F.3d 1233, 1236-37 (11th Cir. 2003)(citation omitted). Section 1447(c) provides, in pertinent part, that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made *within 30 days* after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c)(emphasis added).

Courts have repeatedly held that the timeliness of removal is a procedural defect, not a jurisdictional one, see Pretka, 608 F.3d at 751-52, and that failure to comply with § 1447(c) waives any objection to a procedural defect. RC Lodge, LLC v. SE Property Holdings, Inc., 2012 U.S. Dist. LEXIS 98199, 2012 WL 2898815, *6 (S.D. Ala. July 16, 2012)(citing Wilson v. General Motors Corp., 888 F.2d 779, 781 n.1 (11th Cir. 1989)). The Court has broad discretion to decide whether a party has waived a procedural defect. See Piper Jaffray & Co. v. Severini, 443

F. Supp. 2d 1016, 1020 (W.D. Wis. 2006)("[a] district court has broad discretion in deciding whether a plaintiff has waived its right to object to procedural irregularities in removal proceedings."); Premier Holidays Int'l, Inc. v. Actrade Capital, Inc., 105 F. Supp. 2d 1336, 1339 (N.D. Ga. 2000) ("this court has the discretion to deny remand even where the removal is untimely").

In this case, there is no question that Shipley filed her motion seeking remand within thirty days of Defendants' removal. However, while the Notice of Removal expressly alleged that it was timely filed, the sole issue raised in Shipley's remand motion was related to subject matter jurisdiction, namely that complete diversity of citizenship was lacking. No procedural defects were raised. It was only in Shipley's reply, filed some fifty-four days after the Notice of Removal, that Shipley asserted that the removal was untimely.

Courts are split over the issue of whether the timely filing of a motion to remand alleging a procedural defect, such as lack of unanimity, is sufficient to preserve a timeliness or other procedural objection under § 1447(c). In Northern California Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co., 69 F.3d 1034 (9th Cir. 1995), the Ninth Circuit held that where the plaintiff's remand motion was filed within thirty days, but no defect in the removal procedure was ever raised until a reply

19

brief filed more than thirty days after the removal petition, the plaintiff had waived any procedural objections. The court reasoned that "the purpose of the 30-day time limit is to resolve the choice of forum at the early stages of litigation, and to prevent the shuffling of cases between state and federal courts after the first thirty days." Id. at 1038 (citations and internal quotation marks omitted). The court thus concluded that the defect in removal must be raised "promptly," or the statutory purpose would be defeated. Id.

The Fifth Circuit took the opposite view in BEPCO, L.P. v. Santa Fe Minerals, Inc., 675 F.3d 466, 471 (5th Cir. 2012). In BEPCO, the Fifth Circuit rejected "any suggestion that the timing of the presentation of a removal defect -- rather than the submission of the remand motion -- is what matters for a timeliness analysis under § 1447(c)." Id. There is no controlling precedent in this circuit, but in RC Lodge, 2012 U.S. Dist. LEXIS 98199, the court discussed the conflict. In that case, the plaintiffs' motion to remand only raised lack of subject matter jurisdiction; however, fifty-two days later, plaintiffs argued that remand was required because all of the defendants had not consented to the removal. In RC Lodge, the court recognized the conflict and observed:

> The Fifth Circuit found section 1447(c)
> unambiguous in this respect, 675 F.3d at
> 471, but the Court is not so sure. After

all, the sort of motion to remand that must
be filed within 30 days of removal is
specifically described as one "on the basis
of any defect" in removal procedure. A
motion to remand that asserts no defect in
removal procedure cannot easily be
characterized as one made "on the basis" of
such a defect. In the Court's view, this
language renders the statute at least
ambiguous and so opens the door to
examination of its purpose in order to
resolve the ambiguity. The Ninth Circuit
considered that purpose and found it to
bolster its reading of the statute. 69 F.3d
at 1038.

RC Lodge, 2012 U.S. Dist. LEXIS 98199.

The court in RC Lodge ultimately decided that it was not

necessary to resolve the issue because the defendant had not

argued that the plaintiffs' consent argument was untimely under

§ 1447(c). See RC Lodge, 2012 U.S. Dist. LEXIS 98199. Several

courts that have resolved the issue have endorsed the reasoning

set forth in Pittsburg-Des Moines and have held that an attack

on the timeliness of removal, first raised more than thirty days

after a notice of removal, is waived. See Engh v. SmithKline

Beecham Corp., 2007 U.S. Dist. LEXIS 85882, 2007 WL 4179361, *2

(D. Minn. Nov. 20, 2007)(court refused to entertain the

plaintiffs' argument that remand was necessary due to

untimeliness of the removal notice when plaintiff's first raised

the issue in its reply brief almost two months after the removal

notice was filed.); Hoste v. Shanty Creek Mgmt., Inc., 246 F.

Supp. 2d 776, 780 (W.D. Mich. 2002)(holding that the plaintiff's

assertion of untimeliness was untimely when first raised thirty-six days after the notice of removal was filed, despite the timely filing of a remand motion.); see also Clark v. USAA Cas. Ins. Co., 2015 U.S. Dist. LEXIS 155947, 2015 WL 7272305, *2 (M.D. Fla. Nov. 18, 2015)(court held that the plaintiff waived any objection to the timeliness of a removal where the issue was not raised in his motion to remand but was instead raised for the first time at a hearing four months later.); Robinson v. Affirmative Ins. Holdings, Inc., 2013 U.S. Dist. LEXIS 28306, 2013 WL 838285, *2 (N.D. Ala. Mar. 1, 2013)(by filing a motion to remand challenging only the amount in controversy, plaintiff expressly waives any objection to defendants' untimely removal.); accord Harris v. JLG Indus., 2016 U.S. Dist. LEXIS 9195, *28 (S.D. Ala. Jan. 11, 2016), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 9196 (S.D. Ala. Jan. 27, 2016).

In this action, Defendants argue that Shipley waived the timeliness argument because it was not raised in her motion to remand, but was instead raised fifty-four days after the filing of the Notice of Removal.  Because the timeliness of a removal is a procedural, rather than a jurisdictional defect, it must be raised within thirty days of the Notice of Removal. Shipley failed to timely raise the timeliness of the removal; therefore, based on the rationale of Pittsburg-Des Moines, 69 F.3d 1034,

the undersigned finds that Shipley waived the timeliness argument. Thus, her motion to remand is due to be denied.

**III. <u>CONCLUSION</u>.**

For the reasons set forth above, the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand (Doc. 10) be **DENIED**.

<u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error, if necessary, "in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which

objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **19th** day of **June, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
